FILED
JAMES BONINI
CLERK

2012 OCT 11 PM 4: 12

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS



### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| THE HUNTINGTON NATIONAL BANK :<br>41 South High St.<br>Columbus, Ohio 43215 | Case No. **2 : 12 cv 937**<br><br>**JUDGE SARGUS**<br><br>Judge _____ |
| Plaintiff, : | |
| v. : | **MAGISTRATE JUDGE KING** |
| TAYLOR BUILDING PRODUCTS, INC. :<br>631 North First St.<br>West Branch, Michigan 48661 | |
| Defendant. : | |

## COMPLAINT

Now comes Plaintiff The Huntington National Bank ("Plaintiff"), by and through counsel, and for its Complaint hereby alleges and avers as follows:

## PARTIES

1.    Plaintiff is a national banking association with its main office, as designated in its articles of association, located in Columbus, Ohio.

2.    Defendant Taylor Building Products, Inc. ("Taylor Building") is a Delaware corporation with a business location in West Branch, Michigan.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states.

1

5791930v1

4. This Court has personal jurisdiction over Taylor Building in that Taylor Building executed the documents at issue herein in Franklin County, Ohio and expressly agreed to voluntarily submit to the jurisdiction of this Court.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that Taylor Building executed the documents at issue herein in Franklin County, Ohio and expressly agreed to consent to venue in this Court.

**BACKGROUND**

**A.    The Revolving Loan**

6. Plaintiff incorporates each and every preceding allegation as if fully restated herein.

7. On or about April 13, 2011, Plaintiff, Taylor Building and a non-party known as The Premium Glass Company, Inc. ("Premium Glass") entered into a Loan and Security Agreement (the "Revolving Loan Agreement"), pursuant to the terms of which Plaintiff agreed to make a business loan available to the Taylor Building and Premium Glass in the maximum principal amount of $3,000,000.00 (the "Revolving Loan"). A true copy of the Revolving Loan Agreement is attached hereto as Exhibit A.

8. On or about April 13, 2011, to evidence advances made pursuant to the Revolving Loan Agreement, Taylor Building and Premium Glass, as joint and several co-makers, executed and delivered to Plaintiff, as holder, a Revolving Note (the "Revolving Note") in the original principal amount of $3,000,000.00 . A true copy of the Revolving Note is attached hereto as Exhibit B.

2

9.      Pursuant to the terms of the Revolving Loan Agreement, the Revolving Note is secured by a first-priority security interest in all inventory, equipment, accounts, and all other assets of the Borrowers which comprise the Collateral (as defined in the Loan Agreement).

10.     Plaintiff's security interest in the Collateral was perfected by filing a UCC-1 Financing Statement with the Delaware Secretary of State on April 13, 2011 at 1:48 PM as Instrument Number 2011-1561664 (the "Financing Statement").  A true copy of the Financing Statement is attached hereto as Exhibit C.

11.     Certain defaults occurred under the Revolving Note and the Revolving Loan Agreement because, among other defaults, Taylor Building and Premium Glass failed to maintain the Fixed Charge Coverage Ratio (as defined in the Revolving Loan Agreement) and the Leverage Ratio (as defined in the Revolving Loan Agreement) required under the Revolving Loan Agreement.

12.     On or about May 31, 2012, Taylor Building, Premium Glass, and Plaintiff entered into a Forbearance and Loan Modification Agreement (the "Forbearance Agreement"), pursuant to the terms of which Plaintiff agreed to forbear from exercising its rights and remedies under the Revolving Loan Agreement for a limited period of time provided Taylor Building and Premium Glass timely complied with all of the provisions of the Forbearance Agreement.  The parties also agreed to modify certain terms of the Revolving Loan under the Forbearance Agreement.  A true copy of the Forbearance Agreement is attached hereto as Exhibit D.

13.     Pursuant to the terms of the Forbearance Agreement, the terms of the Loan Documents were amended to provide that the outstanding balance of the Revolving Loan would be due and payable in full no later than September 1, 2012 (the "Revolving Loan Maturity Date").

5791930v1

14.     On or about September 1, 2012, Defendants and Plaintiff entered into a First Amendment to Forbearance and Loan Modification Agreement (the "Forbearance Modification"), pursuant to the terms of which the parties agreed to modify certain terms of the Forbearance Agreement.  A true copy of the Forbearance Modification is attached hereto as Exhibit E.

15.     The Revolving Loan Agreement, the Revolving Note, the Forbearance Agreement and the Forbearance Modification together with all other instruments, affidavits, agreements, security agreements, mortgages, assignments of rent, financing statements and documents executed and delivered in connection therewith are sometimes referred to herein collectively as the "Revolving Loan Documents".

**B.      The Term Loan**

16.     On or about April 13, 2011 Taylor Building, as borrower, and Plaintiff, as lender, entered into that certain Loan Agreement and Borrower Certification (the "Term Loan Agreement"), pursuant to the terms of which Plaintiff agreed to make a term loan to Taylor Building in the principal amount of $4,128,000.00 (the "Term Loan").  A true copy of the Term Loan Agreement is attached hereto as Exhibit F.

17.     On or about April 13, 2011, Taylor Building executed and delivered to Plaintiff a Note (the "Term Note") in the original principal amount of $4,128,000.00.  A true copy of the Term Note is attached hereto as Exhibit G.

18.     To secure repayment of the Term Note, Taylor Building executed and delivered to Plaintiff a Mortgage (the "Mortgage"), which was recorded in the official public records in Ogemaw County, Michigan on April 15, 2011 as Document Number 3098612. Taylor Building also executed and delivered to Plaintiff an Assignment of Rents (the "Assignment of Rents"),

4

5791930v1

with respect to the Property (as defined herein), pursuant to which Taylor Building pledged to Plaintiff a lien on all Rents (as defined therein), and which was recorded in the official public records in Ogemaw County, Michigan on April 15, 2011 as Document Number 3098613. A true copy of the Mortgage and Assignment of Rents are attached hereto as Exhibit H.

19. Pursuant to the Mortgage, Plaintiff was granted a first-priority mortgage lien on the real property commonly known as 631 N. First Street, West Branch, Michigan 48661 (the "Property"), along with a security interest in all Personal Property (as defined in the Mortgage) associated with the Property.

20. The Term Loan Agreement, the Term Note, and the Mortgage, together with all other instruments, affidavits, agreements, security agreements, mortgages, assignments of rent, financing statements and documents executed and delivered in connection therewith are sometimes referred to herein collectively as the "Term Loan Documents". The Revolving Loan Documents and the Term Loan Documents are collectively referred to herein as the "Loan Documents".

### C.   Events of Default

21. Pursuant to the terms of the Forbearance Modification, despite the fact that the Revolving Loan matured on the Revolving Loan Maturity Date, Plaintiff agreed to forbear from exercising its rights and remedies under the Revolving Loan Documents for a limited period of time provided Taylor Building and Premium Glass timely complied with all of the provisions of the Forbearance Agreement, as modified.

22. The Forbearance Agreement, as amended by the Forbearance Modification, required Taylor Building and Premium Glass to maintain a certain Fixed Charge Coverage Ratio

5791930v1

and a certain Leverage Ratio and also required Taylor Building and Premium Glass to cooperate with an operational and financial consultant (the "Consultant").

23.     Taylor Building and Premium Glass failed to maintain the required Fixed Charge Coverage Ratio and Leverage Ratio and failed to cooperate with the Consultant. These failures constitute Events of Default under the Loan Documents.

24.     Based upon these Events of Default, the Standstill Period (as defined in the Forbearance Agreement) terminated and the entire principal balance of the Revolving Loan together with accrued interest and all other charges and fees were due and payable on the Revolving Loan Maturity Date.

25.     The terms of the Term Loan Documents provide that any default by Taylor Building on any other loan from Plaintiff to Taylor Building constitutes a default under the Term Loan Documents, including the Term Note.

26.     On October 2, 2012 the Plaintiff delivered default notices to Taylor Building indicating that it had failed to comply with the terms and conditions of the Forbearance Agreement, as amended, and the Loan Documents, and that the entire principal amount for both the Revolving Note and the Term Note, plus all accrued interest, costs and expenses were immediately due and payable in full. Copies of the Default Letters with respect to the Revolving Loan and the Term Note are attached hereto as Exhibit I.

27.     On October 10, 2012, Plaintiff filed an action in the Franklin County, Ohio Court of Common Pleas seeking cognovit judgment on the Revolving Note.

## COUNT ONE: BREACH OF THE TERM NOTE

28.     Plaintiff repeats and re-alleges each of its prior allegations as if fully restated herein.

6

5791930v1

29.     Based on the occurrence of these Events of Default (as defined in the Loan Documents), Taylor Building is in default of its obligations under the Term Note, the Mortgage, and the other Term Loan Documents.

30.     Despite demand, Taylor Building has failed to pay all amounts due and owing under the Term Loan.

31.     The unpaid balance due under the Term Note is $3,956,116.67 as of October 10, 2012 plus interest thereon in the amount of $642.31 per diem from October 10, 2012.

32.     Plaintiff is further entitled to additional amounts under the Term Note including, but not limited to, late charges, collection costs, and legal fees.

### COUNT TWO: FORECLOSURE OF SECURITY INTERESTS

33.     Plaintiff repeats and re-alleges each of its prior allegations as if fully restated herein.

34.     The terms of the Revolving Loan Agreement include a security agreement pursuant to which Taylor Building granted to Plaintiff a security interest (the "First Security Interest") in all of Taylor Building's personal property included within the definition of Collateral, including, but not limited to, all of its Inventory, Equipment and Accounts and other Collateral (as each term was defined in the Revolving Loan Agreement).

35.     The First Security Interest secures all of the obligations of Taylor Building to Plaintiff, including all amounts owing under the Revolving Loan Documents and the Term Loan Documents.

36.     Upon an Event of Default, Taylor Building agreed that Plaintiff shall have all the rights and remedies of a secured party under the Uniform Commercial Code with respect to the Collateral.

7

5791930v1

37.     As set forth above, certain Events of Default have occurred under the terms of the Loan Documents.

38.     Accordingly, Plaintiff is entitled to have its First Security Interest in the Collateral foreclosed, and to have the Collateral assembled and sold upon execution and in accordance with law.

39.     The terms of the Mortgage also include a security agreement pursuant to which Taylor Building granted to Plaintiff a security interest (the "Second Security Interest") in all of Taylor Building's personal property and fixtures included within the definition of Personal Property (as defined in the Mortgage) associated with the Property.

40.     The Second Security Interest secures all of the obligations of Taylor Building to Plaintiff under the Term Loan Documents.

41.     Upon an Event of Default, Taylor Building agreed that Plaintiff shall have all the rights and remedies of a secured party under the Uniform Commercial Code with respect to the Personal Property.

42.     As set forth above, certain Events of Default have occurred under the terms of the Mortgage and the Term Loan Documents.

43.     Accordingly, Plaintiff is entitled to have its Second Security Interest in the Personal Property foreclosed, and to have the Personal Property assembled and sold upon execution and in accordance with law.

## COUNT THREE: APPOINTMENT OF RECEIVER

44.     Plaintiff repeats and re-alleges each of its prior allegations as if fully restated herein.

45.     The Mortgage provides in part, upon an Event of Default:

8

Lender shall have the right to have a receiver appointed to take possession of all or any party of the Property with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness.

46.     Similarly, the Forbearance Modification provides in part:

Upon a Standstill Termination Event, unless the Obligations are fully, finally and irrevocably paid in full, the Bank may bring suit against the Borrowers in any state or federal court in Franklin County, Ohio or any other location where any business operations of the Borrowers are located, and request that a receiver be appointed over the business operations of the Borrowers. The Borrowers hereby expressly authorize the Bank to file the Receiver Order in any such action indicating the Borrowers' consent to appointment of a receiver over their business operations. The Borrowers hereby expressly consent to the appointment of a Receiver upon a Standstill Termination Event and waive any objections to the appointment of a Receiver and agree that the filing of the Receiver Order upon a Standstill Termination Event shall be prima facie evidence of the Bank's entitlement to have a Receiver appointed to run the businesses of the Borrowers.

47.     By reason of the aforesaid Events of Default under the Loan Documents, Plaintiff is entitled to have a receiver appointed by the Court to secure, take charge of, maintain, and operate the business of Taylor Building, including but not limited to the Collateral, the Property and the Personal Property, to apply all Rents in accordance with the provisions of the Mortgage and other Loan Documents, to collect all Accounts and other amounts owing to Taylor Building and apply the same pursuant to the terms of the Loan Documents, to sell inventory, to finish work in progress, and to create and fulfill new product orders on such terms as may be beneficial to the creditors of Taylor Building.

**WHEREFORE**, Plaintiff, The Huntington National Bank, respectfully requests the Court enter judgment against Taylor Building as follows:

1.     For judgment against Taylor Building on the Term Note in the amount of $3,956,116.67 as of October 10, 2012 plus interest thereon in the amount of $642.31 per diem from October 10, 2012, plus additional amounts to which Plaintiff is entitled under the Term Loan Documents including, but not limited to, late charges, collection costs, and legal fees;

9

5791930v1

      2.      For an Order declaring that the First Security Interest and the Second Security Interest are a valid and subsisting first and best liens upon the Collateral and the Personal Property, and that the liens granted thereon be foreclosed, and that the Collateral and Personal Property be assembled and sold upon execution and in accordance with law;

      3.      That upon the sale of the Collateral and the Personal Property, the proceeds of such sale be paid to Plaintiff to satisfy the amount of its existing liens and the interest, charges, fees, disbursements, and advancements and other matters related to said real estate and personal property, together with all cost and fees herein expended, including attorney fees;

      4.      For appointment of a receiver to secure and take charge of the Property, the Personal Property, any and all of the Collateral held by Taylor Building, and all other business operations of Taylor Building, to collect all Accounts, to apply all Rents in accordance with the provisions of the Mortgage, to operate the business of Taylor Building for the benefit of its creditors, and to take other actions authorized under law or equity;

      5.      For an Order granting to Plaintiff all other remedies of a secured party provided under the terms of the Loan Documents and at law and equity.

      6.      For all such other relief to which Plaintiff may be entitled in equity or at law.

Respectfully submitted,

Justin W. Ristau     (0075222)
Robert T. Castor     (0082566)
Maggie M. Abbulone (0087729)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio 43215
(614) 227-2300 Telephone
(614) 227-2390 Telefax
jristau@bricker.com
rcastor@bricker.com
mabbulone@bricker.com
*Attorneys for Plaintiff The Huntington National Bank*

10

5791930v1