UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **THE HUNTINGTON NATIONAL BANK,** : | Case No.: 2:12 CV 937 | |
| Plaintiff : | | |
| : | | |
| vs. : | **Judge Watson** | |
| : | | |
| **TAYLOR BUILDING PRODUCTS, INC.,** : | **Magistrate Judge King** | |
| Defendant : | | |

### MOTION OF RECEIVER FOR TERMINATION OF RECEIVERSHIP

Now comes Bill Frazier (the "Receiver"), the duly appointed acting receiver of the business and assets of Taylor Building Products, Inc., ("Taylor"), by and through counsel, and hereby moves this Court for the entry of an Order terminating the Receivership administration, releasing the Receiver from all duties and liabilities thereunder, releasing the $1,000.00 bond, authorizing the Receiver to take receipt of certain funds post termination and distribute the same to Plaintiff, Huntington National Bank ("Huntington National Bank"), and to determine that obligations, if any, of the Receiver under a certain Management Agreement entered into by the Receiver with the ultimate purchaser of the assets of Taylor.  A Memorandum in Support is follows.

Respectfully submitted,

  /s/   Myron N. Terlecky
Myron N. Terlecky (0018628)
Aaron C. Firstenberger  (0072261)
Strip, Hoppers, Leithart, McGrath & Terlecky Co., LPA
575 South Third Street
Columbus, Ohio 43215-5759
T: (614) 228-6345  F: (614) 228-6369
mnt@columbuslawyer.net
acf@colulmbuslawyer.net
Attorneys for Receiver

## **MEMORANDUM IN SUPPORT**

1. As this Court is aware, the Receiver previously filed a Motion for Termination of Receivership on April 24, 2014, (the "First Motion") (Doc. 59). The Receiver incorporates by reference all information set forth in the first motion.

2. The Receiver subsequently withdrew the First Motion due a lawsuit pending in the United States District Court, Eastern District of Michigan, Case No. 1:13-CV-14915-TLL-CEB, filed against Taylor and another party, Taylor Entrance Systems, Inc., the entity which purchased the assets of Taylor during this proceeding (the "Michigan Lawsuit").  As discussed at the status conference held on June 4, 2014, the Receiver notifies this Court that the Michigan Court, on July 9, 2014, entered an Opinion and Order granting Defendant's Motion to Dismiss and ordering Plaintiff to show cause (Doc. 17).

3. Subsequent to the Michigan Lawsuit being dismissed, demand has been made upon the Receiver by the purchaser to pay its outstanding legal bills and has provided the Receiver with bills for fees and expenses totaling $11,326.08.  As set forth in the First Motion and in the Final Report and Accounting of the Receiver, on February 5, 2014 (Doc. 53) (the "Final Report") the Receiver has no funds in his possession to pay any such obligation.  Further, the Receiver, contrary to the position of the purchaser, does not concede that there is a requirement to indemnify the purchaser for any of its fees incurred.

4. The Receiver has received correspondence from the purchaser demanding that the Receiver indemnify the purchaser for legal fees that it incurred in connection with the Michigan Lawsuit.  The basis for the purchaser's claim is found in the Management Agreement entered into on December 21, 2012, a copy of which is attached hereto as Exhibit A, as set forth in sections 4.2 and 4.4 of the Management Agreement.

5. The Receiver requests that the Court make a determination of the obligations of the Receiver, if any, with respect to the Management Agreement. The purchaser, Taylor Entrance Systems, Inc., the entity which ultimately purchased the assets of Taylor Building Products, Inc., from the Receiver, believes that the Management Agreement requires the Receiver to indemnify it with respect to the Michigan Lawsuit.

6. A different interpretation of the Management Agreement would be that the indemnification provision is only related to claims brought against the Manager for activities that occurred during the term of the Management Agreement. The Michigan Lawsuit was brought against the purchaser based upon the allegation "that upon information and belief, Defendant Taylor Entrance bought out and/or merged with Taylor Building at some point during 2012 . . . ." As such, the Michigan Lawsuit involved claims not as Manager, but as the ultimate purchaser of the assets of Taylor.

Based upon the foregoing, the Receiver requests the termination of this Receivership Estate, reserving to the Receiver the power and duty to receive and make distribution of the funds referenced in the First Motion consistent with the Court's prior Orders and Findings, that the Court determine whether there is any obligation of the Receiver to indemnify the purchaser and, upon termination of the Receivership, that the bond be released and that the Receiver be released of all duties and liabilities associated with the administration in this case.

Respectfully submitted,

 /s/   Myron N. Terlecky
Myron N. Terlecky (0018628)
Aaron C. Firstenberger  (0072261)
Strip, Hoppers, Leithart, McGrath & Terlecky Co., LPA
575 South Third Street
Columbus, Ohio 43215-5759
T: (614) 228-6345  F: (614) 228-6369
mnt@columbuslawyer.net
acf@colulmbuslawyer.net
Attorneys for Receiver

EXHIBIT A

## MANAGEMENT AGREEMENT

This Management Agreement (the "<u>Agreement</u>") is made and entered into as of the ___ day of December, 2012, by and between Bill Frazier, as Court-appointed Receiver for certain assets of Taylor Building Products, Inc. (the "<u>Receiver</u>") and Taylor Entrance Systems, Inc., a Wisconsin Corporation ("<u>Manager</u>").

### RECITALS:

WHEREAS, Taylor Building Products, Inc. ("<u>Owner</u>") is the owner and operator of a steel door manufacturing company located at 631 N. First Street, West Branch, Michigan in Ogemaw County, Michigan (the "<u>Property</u>");

WHEREAS, Owner is the owner of all buildings, improvements and fixtures constructed and/or situated on the Property (collectively, the "<u>Improvements</u>"). The Property, Improvements, and all furnishings, equipment, inventory, and other personal property used in connection with the Property and Improvements are hereinafter collectively referred to as the "<u>Business</u>");

WHEREAS, pursuant to that Order Appointing Receiver, dated October 15, 2012 and any subsequent orders (collectively, the "<u>Receivership Order</u>"), and entered in that case styled *Huntington National Bank v. Taylor Building Products, Inc.* in the United States District Court, Southern District of Ohio, Case No. 2:12 CV 937, the Receiver was appointed receiver for all collateral securing repayment of certain loans by Huntington National Bank to Taylor Building Products, Inc. (which are hereinafter also called the "<u>Receivership Estate</u>");

WHEREAS, on or about November 16, 2012, Receiver and Manager entered in an asset purchase agreement (herein "Purchase Agreement"), whereby Manager will purchase all assets of the Receivership Estate from the Receiver, subject to further Order of the United States District Court, Southern District of Ohio (herein "<u>Receivership Court</u>").

WHEREAS, final transfer of the Receivership Estate assets to Manager will not take place until such time as the appeal period for the Order of the Receivership Court confirming sale has expired or all appeals filed have been adjudicated (herein "<u>Expiration</u>");

WHEREAS, the parties desire that Manager assume control of the Business upon Order of the Receivership Court confirming the sale, and a closing (herein "<u>Closing</u>") is held at which time all documents of transfer will be placed in escrow by Chicago Title Company (herein "<u>Chicago Title</u>") until Expiration;

NOW, THEREFORE, Receiver and Manager agree as follows:

EXHIBIT A

## ARTICLE I
## APPOINTMENT; TERM

1.1 **Appointment of Manager.** Receiver hereby contracts with Manager as Receiver's sole manager for the operation and management of the Business, and Manager hereby accepts such duties and obligations, all on the terms and conditions set forth in this Agreement.

1.2 **Term.** The term ("Term") of this Agreement shall be from the date Closing is completed (the "Commencement Date") and terminating upon Expiration and release of all transfer documents from the escrow with Chicago Title.

## ARTICLE II
## MANAGEMENT OF THE BUSINESS

2.1 **General Duty and Authorization of Operation and Management.** Subject to the terms of this Agreement, Receiver engages and authorizes Manager to perform such operational, managerial, administrative, supervisory, accounting and other related services which Manager, in its commercially reasonable discretion, deems to be reasonable and necessary for operation and management of the Business for the reasonable benefit of the Receivership Estate, and Manager accepts such engagement and authorization and agrees to use its reasonable best efforts to fulfill its obligations under this Agreement in a professional manner. Further, the Manager shall have the affirmative duty to operate the Business in the regular course for the term of this Agreement.

2.2 **Specific Duties and Authorization.** Manager shall provide such direction, advice, consultation, supervision and personnel as Manager reasonably determines necessary for the operation and management of the Business, and Manager agrees to do, without limitation, the following:

   2.2.1 **Management.** Manager shall manage and direct the policy and day-to-day operations of all phases of the Business. In furtherance of those duties, Manager shall, at its own expense, fund the payment of all Business expenses accruing post-Closing. Manager shall employ record-keeping such that its payments for the benefit of the Business are easily identifiable from payments made in the course of its other activities.

   2.2.2 **Repairs.** Manager shall make or cause to be made such ordinary repairs and alterations to the Business as Manager, in its reasonable discretion, determines are appropriate for operation and management of the Business, all of which shall be expenses of the Manager.

   2.2.3 **Maintenance.** Manager shall make periodic inspections of the Business to determine necessary and appropriate repairs, maintenance and replacement, and shall supervise and perform all such maintenance, repairs and replacements, so that the Business's condition is at all times at least as good as it was at Closing, and shall perform all maintenance, repairs and replacements in order to keep the Business in a clean, safe and orderly condition and in compliance with all laws and government rules and regulations, including without limitation the

EXHIBIT A

performance of the following: (i) building and other improvement maintenance (interior and exterior), (ii) mechanical maintenance, (iii) the collection of trash and the prevention of any dumping. Manager shall promptly notify Receiver of any damage or destruction to the Business. All maintenance shall be an expense of the Manager. Manager shall have no affirmative duty tor remediate any environmental issues as a condition of this Section.

2.2.4 **Capital Expenditures**. Any machinery, equipment, and furnishings purchased by Manager for the Business, will be purchased at Manager's expense, and will be deemed property of the Manager. Manager shall not be authorized to make any other capital expenditures during the Term of this Agreement.

2.2.5 **Taxes and Assessments**. Manager shall assist Receiver in causing to be paid and discharged for Owner and/or Receiver, before delinquency, all taxes, charges and assessments, including without limitation, real and personal property taxes, gross receipts taxes, general and special assessments, and other charges of a similar nature which may be levied or assessed against the Receivership Estate; excluding, however, all income, transfer and capital gains taxes assessed and/or imposed against Owner or Receiver. Receiver shall pay all taxes attributable to the real and personal property accruing prior to the Commencement Date.

2.2.6 **Utilities and Services**. Manager shall cause to be paid for the Receivership Estate, before delinquency, all charges for utilities and services used in or on the Business, including without limitation, charges for water, telephone, electricity, gas, sewage disposal, rubbish removal and security, from Closing through Expiration. Where necessary, the aforementioned charges will be pro-rated as of the date of Closing

2.2.7 **Services and Supplies**. Manager shall supervise and arrange for the purchase of any and all inventories, provisions, services and supplies which are necessary and proper to maintain the Business. Manager shall have no obligation under this Agreement to purchase any such items of the Business as they exist on the Commencement Date.

2.2.8 **Employment of Personnel**. Not later than Closing, the Receiver will terminate all existing Taylor Building Products employees. Manager may engage any and all such employees thereafter as it deems appropriate and is under no obligation to do so. Manager will direct and shall have operational control over the employees at the Business.

2.2.9 **Service and Labor Contracts**. Manager shall not negotiate or enter into any service or labor contracts without prior approval of the Receiver.

2.2.10 **Notices of Claim of Injury or Damage**. Manager shall notify the Receiver of any personal injury or property damage occurring to or claimed by any third party on the premises of the Business or with respect to the Receivership Estate promptly upon obtaining knowledge thereof.

EXHIBIT A

    **2.2.11 Accounts Receivable.** Manager shall diligently collect of all accounts receivable. Any payments received on accounts receivable/orders accruing prior to Closing, shall be remitted to, and become the property of the Receiver. Manager's duty to collect and remit for pre-Closing receivables shall survive Expiration and termination of this Agreement. Manager shall be permitted to retain funds remitted in payment of post-Closing receivables. Settlement of any pre-Closing receivable shall require the approval of the Receiver. Payments received shall be applied to the invoices to which the payment relates. In the event a payment is not traceable to a certain invoice, that amount shall be applied to the earliest outstanding invoice for that account.

    **2.3 Management Fee.** In exchange for the services provided by Manager under this Agreement, Manager shall be entitled to a management fee as its sole source of compensation (the "Management Fee"). The Management Fee shall be equal to the net profits derived from the operation of the Business, less all expenses incurred in the operation of said Business during the Term. In the event the expenses and liabilities of the operation of the Business exceed the gross income therefrom, no Management Fee shall be due the Manager, and Manager shall incur and absorb any loss, without any right of recovery from the Receivership Estate.

    **2.4 Reports and Accountings.** Manager shall make such reports and accountings as may be reasonably requested by Receiver including, but not limited to, the following: (a) daily invoicing reports; (b) entry door units produced daily reports; (c) borrowing base reports; (d) collateral detail reports; (e) profit-and-loss; (f) balance sheets; and (g) accounts receivable reports.

    **2.5 Books and Records.** Receiver shall provide to Manager all information and records with respect to receipts and revenues of the Business, as well as all expenses paid by Receiver from the Receivership Account. Manager shall maintain separate and complete books and records in connection with its management and operation of the Business. Such books and records shall be kept in a manner sufficient to respond to Receiver's reasonable financial information requirements and shall show, without limitation, the actual financial information for the Business for each month. Manager will make the books of account and all other records relating to or reflecting the operation of the Business available to Receiver at all reasonable times for examination, inspection and/or copying.

## ARTICLE III
## BANK ACCOUNTS

    **3.1 Bank Accounts.** Manager shall make no changes to the cash collection system currently in place, such that all receipts prior to the Commencement Date will continue to be paid to the existing Huntington National Bank lock-box account. Manager may set up a separate basis for receipts for invoices after the Commencement Date. Receiver and Manager shall promptly forward to the other any receipts either receives that relate to invoices of the other.

EXHIBIT A

## ARTICLE IV
## INSURANCE AND INDEMNIFICATION

**4.1 Insurance.** Receiver and Manager acknowledge that the existing insurance for general liability, business interruption and casualty insurance shall be maintained as an expense of the Receivership Estate. Manager and Receiver shall work together to name each as additional insureds as their interests relate to the Business. Manager shall be responsible for establishing the necessary worker's compensation account(s) as to such employees as it may utilize at the Business.

**4.2 Indemnification by Receiver.** The Receivership Estate shall indemnify and hold Manager harmless from all losses, liabilities, claims, costs and expenses whatsoever (including reasonable attorneys' fees and expenses and costs of investigation) imposed or asserted against Manager for any claim or action or proceeding brought by any employee, independent contractor, customer or other person or entity relating to the operation and management of the Receivership Estate or Business prior to the Commencement Date For the avoidance of doubt, this indemnity shall not cover any claim or action or proceeding brought by Receiver against Manager for a breach of this Agreement.

**4.3 Indemnification by Manager.** The Manager shall indemnify and hold the Receivership Estate harmless from all losses, liabilities, claims, costs and expenses whatsoever (including reasonable attorneys' fees and expenses and costs of investigation) imposed or asserted against Receivership Estate for any claim or action or proceeding brought by any employee, independent contractor, customer or other person or entity relating to the operation and management of the Business after the Commencement Date

**4.4 Survival.** The obligations of indemnification of Manager, Receiver, and the Receivership Estate under this Article IV shall survive the expiration and/or termination of this Agreement.

## ARTICLE V
## TERMINATION

This Agreement shall terminate upon Expiration and closing of the Chicago title escrow account, or as otherwise directed by the Receivership Court.

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES

**6.1 Manager Representations and Warranties.** Manager hereby represents and warrants as follows:

    **6.1.1 Organization.** It is a Wisconsin corporation duly formed, validly existing and in good standing under the laws of the state of its formation and is authorized to conduct business in the State of Michigan, and with full power and authority to execute, deliver and perform this Agreement;

EXHIBIT A

      6.1.2 **Execution**. The execution, delivery and performance of this Agreement have been duly authorized by all necessary action of Manager;

      6.1.3 **Enforceability**. This Agreement constitutes a legal, valid and binding agreement of Manager, enforceable against Manager in accordance with its terms, except as limited by bankruptcy, insolvency, receivership and similar laws from time to time in effect;

      6.1.4 **Signature**. The person executing this Agreement on behalf of Manager has the power and authority to execute this Agreement on behalf of Manager; and

    6.2 **Receiver's Representations and Warranties**. Receiver represents and warrants that the persons executing this Agreement on behalf of Receiver have the power and authority to execute this Agreement on behalf of the Receivership Estate.

## ARTICLE VII
## MISCELLANEOUS PROVISIONS

    7.1 **Additional Documentation**. Receiver will provide Manager with any additional documentation necessary to establish Manager's authority to act pursuant to the terms of this Agreement.

    7.2 **Breach; Notice and Cure**. If any breach shall occur under this Agreement, the nonbreaching party must give the breaching party five (5) days written notice before undertaking any remedies, unless the breach creates an emergency condition requiring action in less than five (5) days. Remedies shall include termination of the Agreement, damages, specific performance, and the right to cure the breach and be reimbursed for all reasonable costs associated with the cure. In the case of an emergency, either party may, after notice to the other party, perform in the other party's stead prior to the expiration of the grace period; provided, however, the other party shall not be deemed in breach under this Agreement upon cure.

    7.3 **Receiver's Right to Inspect**. Receiver shall have the right to inspect the Business at any time without the necessity of notice to or consent by Manager.

    7.4 **Notice**. Any notice required or permitted to be delivered hereunder shall be in writing and shall be deemed received upon (i) personal delivery to the party to whom the notice is directed; or (ii) if sent by nationally recognized overnight courier service, one (1) day following its deposit with such nationally recognized overnight courier service; and (iv) if sent by mail, three (3) business days following its deposit in the United States mail, postage prepaid, certified mail, return receipt requested; or (iii) transmission of a facsimile or email and confirmation of complete receipt is received by the transmitting party during normal business hours or on the next business day if not confirmed during normal business hours, and an identical notice is also sent simultaneously by mail, overnight courier, or personal delivery as otherwise provided in this Agreement, addressed to Receiver or Manager, as the case may be, at the addresses set forth below (or such other address as Receiver or Manager may specify by notice given pursuant to this Section):

EXHIBIT A

If to Receiver:  Strip, Hoppers, Leithart, McGrath
    & Terlecky Co., L.P.A.
575 South Third Street
Columbus, Ohio 43215
Attn: Myron Terlecky, Esq.
mnt@columbuslawyer.net

If to Manager:  Walter Lew, Esq.
Terwilliger Law Firm
PO Box 8063
Wausau WI 54402-8063
wglew@twpclaw.com

Receiver or Manager may designate a change of address by written notice to the others by giving at least ten (10) days prior written notice of such change of address.

**7.5 Assignability.** This Agreement may not be assigned by Manager without the prior written approval of Receiver, nor is Manager permitted to subcontract any duties under this Agreement.

**7.6 Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio.

**7.7 Forum.** Venue of any action arising out of or related to this Agreement shall exclusively be placed in the Receivership Court. The parties consent to jurisdiction of the Receivership Court and waive the right to trial by jury.

**7.8 Independent Contractor.** It is expressly understood and agreed that Manager will act as an independent contractor in the performance of its duties and responsibilities set forth in this Agreement. No provisions hereunder shall be intended to create an agency, partnership or joint venture between or among Receiver and Manager with respect to the Business, the Receivership Estate, or otherwise, and neither party shall have the power to bind or obligate the other party, except as expressly set forth in this Agreement.

**7.9 Limitation on Liability.** Manager agrees to look solely to the Receivership Estate for the satisfaction of any liability or obligation arising under this Agreement or the transactions contemplated hereby, or for the performance of any of the covenants, warranties, obligations or other agreements contained herein, and further agrees not to sue or otherwise seek to enforce any personal obligation against Receiver or any of Receiver's employees or affiliates with respect to any matters arising out of or in connection with this Agreement or the duties and obligations contemplated hereby, except to the extent of any fraud or willful misconduct by Receiver or Receiver's employees.

Receiver agrees to look solely to Manager for the satisfaction of any liability or obligation arising under this Agreement or the transactions contemplated hereby, or for the performance of any of the covenants, warranties, obligations or other agreements contained

EXHIBIT A

herein, and further agrees not to sue or otherwise seek to enforce any personal obligation against any of Manager's employees or affiliates with respect to any matters arising out of or in connection with this Agreement or the duties and obligations contemplated hereby, except to the extent of any fraud or willful misconduct by Manager's employees. Notwithstanding anything in this Agreement to the contrary, nothing in this Agreement shall impose any greater liability or obligation on Receiver than is otherwise imposed by applicable law.

      **IN WITNESS WHEREOF**, the undersigned have executed this instrument as of the date first set forth above.

**RECEIVER:**

Bill Frazier, as Court Appointed Receiver for certain assets of Taylor Building Products, Inc.

By: _____
Name: Bill Frazier, Receiver

**MANAGER:**

Taylor Entrance Systems, Inc..
a Wisconsin corporation

By: _____
Name: _____ JOSEPH J JORDAN
Title: _____ PRESIDENT

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing **Motion of Receiver For Termination of Receivership** was filed electronically utilizing the Court's CM/ECF system on October 2, 2014. This pleading will be served on all parties by operation of the Court's ECF system. All parties may access this document using the Court's ECF system. Service through the Court's ECF system is on the parties listed below:

Kristin Seifert Watson
Cloppert, Latanick, Sauter & Washburn
225 E. Broad St.
Columbus, OH 43215

Maggie M. Abbulone
Robert T. Castor
Justin W. Ristau
Bricker & Eckler
100 S. Third St.
Columbus, OH 43215

The undersigned further certifies that a true and accurate copy of the foregoing was served by regular U. S. mail, postage prepaid, on October 2, 2014, on the parties listed below:

Brian Gianangeli, Esquire
The Law Office of Charles Mifsud, LLC
326 South High Street Annex, Suite 201
Columbus, OH 43215

3825 Columbus Road, LLC
P O Box 687
Newark, OH 43058-0687

Ignazio Cangialosi
417 Saddle Back Trail
Franklin Lakes, NJ 07417

3825 Columbus Road, LLC
c/o Philip S. Phillips, Stat. Agent
320 Main Street
Zanesville, OH 43701

Arthur M. Neiss
Beattie Padovano, LLC
50 Chestnut Ridge Rd., #208
P.O. Box 244
Montvale, NJ 07645

Taylor Building Products, Inc.
c/o Tobin Mann, statutory agent
3010 Columbus-Lancaster Road
Lancaster, OH 43130

Walter Lew
Terwilliger, Wakeen, Piehler & Conway, S.C.
327 N. 17th Ave., Ste. 301
Wausau WI 54401

Andrew W. Janetzke
The Mastromarco Firm
1024 N. Michigan Ave.
Saginaw, MI 48602

Taylor Entrance Systems, Inc.
ATTN: Joseph Jordan
P O Box 296
Wausau, WI 54402

/s/ Myron N. Terlecky
Myron N. Terlecky (0018628)